UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                            :

WEI CHUAN WANG,                             :

                           :

              Plaintiff,           :

                           :

          -v-                  :           24 Civ. 8468 (JPC)

                           :

SPRINGWORKS THERAPEUTICS, INC.,      :         OPINION AND ORDER

                           :

             Defendant.       :

                           :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiff Wei Chuan Wang has filed suit against her former employer, Defendant

SpringWorks Therapeutics, Inc., challenging the conditions and conclusion of her employment.

Defendant has moved to dismiss Plaintiff's Amended Complaint, arguing that Plaintiff fails to state

any claims. Plaintiff concedes that some—but not all—of her claims fail, and seeks leave to file a

Second Amended Complaint. For the reasons that follow, Defendant's motion to dismiss is granted

in part and denied in part; leave to file a Second Amended Complaint is denied.

## I. Background

**A.    Facts[1]**

Plaintiff, a forty-five-year-old Asian woman who lives in Florida, worked for Defendant, a biopharmaceutical company headquartered in Connecticut, from January 7, 2019 to March 4, 2024. Am. Compl. ¶¶ 12-13, 16. When Defendant hired Plaintiff as a Controller in January 2019, she was one of Defendant's earliest hires; to incentivize Plaintiff to join, Defendant offered her about $635,000 in equity. *Id.* ¶¶ 19, 21, 24-25. Plaintiff was recruited to facilitate the transition of Defendant, then a start-up, to public ownership through an initial public offering ("IPO"). *Id.* ¶¶ 20, 22-23. Plaintiff helped build Defendant's accounting and finance departments from scratch, and her efforts were key to Defendant's successful IPO in 2019. *Id.* ¶¶ 26, 32. Indeed, Plaintiff alleges that after the IPO, she helped triple Defendant's pre-IPO value, and her work was rewarded with additional equity-and-options compensation of about $1,090,000 and a promotion to Vice President, Controller. *Id.* ¶¶ 31-34.

About three months before her promotion, Plaintiff's direct report changed from Saqib Islam, Defendant's Chief Executive Officer, to Francis Perier, the company's Chief Financial Officer ("CFO"). *Id.* ¶¶ 27, 31. Plaintiff was one of Perier's four direct reports, and the only Asian woman of the four; the other three were white men. *Id.* ¶¶ 29-30. Plaintiff alleges that despite her exemplary work, her three similarly situated colleagues received greater support and mentoring from Perier, as well as more career-advancement opportunities. *Id.* ¶ 35. For instance, Perier

---

[1] The facts contained in this section, which are assumed true solely for purposes of this Opinion and Order, are taken from Plaintiff's Amended Complaint, including the exhibits attached thereto, Dkt. 18 ("Am. Compl."). *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

never gave Plaintiff annual or bi-annual performance reviews, but did so for the other three; he also approved Plaintiff for only the lowest possible annual wage increase allowed by Human Resources, but consistently approved higher annual wage increases for the other three. *Id.* ¶¶ 41-44.

In November 2021, Defendant reassigned Plaintiff from Vice President, Controller to Vice President, Treasury and Equity, allegedly to put a less-experienced and less-qualified white man in her former role. *Id.* ¶¶ 36-38. While Plaintiff lacked experience for her new position and did not want it, she felt pressured by Defendant to accept the transfer to avoid losing her job. *Id.* ¶¶ 37, 39. Plaintiff alleges that Defendant failed to provide her with proper training or support in the new role. *Id.* ¶ 40. In that role, however, Plaintiff had access to financial data like employee compensation, disciplinary actions, and severance negotiations. *Id.* ¶ 45. She noticed that female employees received lower pay, fewer bonuses, fewer incentive awards, and fewer opportunities for advancement than their similarly situated male colleagues; she also noticed that employees of color were significantly more likely to receive disciplinary actions and have their employments terminated than their similarly situated white counterparts. *Id.* ¶¶ 49, 51. Plaintiff further alleges that while female employees made up at least 55% of Defendant's workforce, fewer than 30% of Defendant's senior management were women. *Id.* ¶¶ 47-48. And between January 2023 and March 4, 2024, all involuntary terminations from the top three levels of Defendant's senior management allegedly were women, and of those, 67% were Asian women. *Id.* ¶ 50.

On March 4, 2024, Defendant terminated Plaintiff's employment as part of a Reduction in Force ("RIF"). *Id.* ¶ 52. Plaintiff alleges that she was included in the RIF because she was an Asian woman over the age of forty. *Id.* ¶ 72. To support that allegation, Plaintiff asserts that of the four direct reports to Perier, only Plaintiff—an Asian woman in a group of white men—was

included in the RIF. *Id.* ¶ 53. At the time of the RIF, only eleven of Defendant's employees had tenure longer than Plaintiff, but none was an Asian woman, and none of those eleven was included in the RIF. *Id.* ¶¶ 60-61. While Asian women made up 10% of Defendant's workforce, they comprised 30% of the RIF. *Id.* ¶ 62. And 80% of the employees terminated in the RIF were over the age of forty. *Id.* ¶ 64. According to Plaintiff, the RIF was executed ahead of Defendant's purchase by another company "to create a younger, less diverse workforce as a selling point to prospective buyers" without any legitimate, non-discriminatory business reason. *Id.* ¶¶ 55, 66-71.

Plaintiff's termination caused her to lose most of her incentive compensation ahead of the sale, while the employees not included in the RIF stood to benefit. *Id.* ¶¶ 56-57. Plaintiff was forced to forfeit or cancel about 75% of the incentive compensation she received as shares and options during her tenure, which Defendant acquired and from which the retained employees profited. *Id.* ¶¶ 58-59, 61.

## B.    Procedural History

In March 2024, Plaintiff filed a complaint against Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 7. The EEOC issued her a Notice of Right to Sue on August 16, 2024. *Id.* ¶¶ 8-9; Am. Compl., Exh. B. Plaintiff then filed suit against Defendant in this District[2] on November 6, 2024. Dkt. 1. The original Complaint asserted three claims: (1) sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. §§ 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et*

---

[2] Plaintiff alleges that venue is proper in the Southern District of New York pursuant to her employment contract with Defendant. Am. Compl. ¶ 6; *see* Am. Compl., Exh. A ¶ 9 ("You and the Company submit to the exclusive personal jurisdiction of the federal and state courts located in the State of New York in connection with any Dispute or any claim related to any Dispute.").

*seq.*, Dkt. 3 ¶¶ 74-80; (2) race discrimination in violation of Title VII, the NYSHRL, and the NYCHRL, *id.* ¶¶ 81-87; and (3) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, the NYSHRL, and the NYCHRL, Dkt. 3 ¶¶ 88-94.

On February 10, 2025, Defendant submitted a letter seeking leave to file a motion to dismiss, arguing that Plaintiff's Title VII and ADEA claims relating to her reassignment were time-barred, that her NYSHRL and NYCHRL claims should be dismissed because the Complaint lacked sufficient "nexus to New York," and that Plaintiff failed to plausibly plead violations of Title VII and the ADEA relating to her termination. Dkt. 14 at 1-3. In response, Plaintiff "concede[d] that the NYCHRL claims do not apply and voluntarily agree[d] to dismiss these claims," but otherwise opposed Defendant's request to file a motion to dismiss and sought "leave from the Court to amend [her] Complaint to the extent necessary to correct any defects." Dkt. 16 at 1-3. The Court granted Plaintiff leave to file an Amended Complaint, Dkt. 17, which she filed on March 10, 2025, Dkt. 18.

The Amended Complaint raises the same claims as the original Complaint, absent a cause of action under the NYCHRL. Am. Compl. ¶¶ 74-80 (sex discrimination under Title VII and the NYSHRL), 81-87 (race discrimination under Title VII and the NYSHRL), 88-94 (age discrimination under the ADEA and the NYSHRL). Defendant once again sought leave to file a motion to dismiss, contending that the Amended Complaint "did not cure any defects" previously outlined, Dkt. 19, and the Court set a briefing schedule on Defendant's anticipated motion, Dkt. 21. Consistent with that briefing schedule, Defendant moved to dismiss the Amended Complaint for failure to state a claim on April 1, 2025. Dkt. 22. Plaintiff filed her response on May 2, 2025. Dkt. 23 ("Opposition"). Defendant replied on May 23, 2025. Dkt. 26 ("Reply").

## II.  Standard of Review

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although a court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

## III.  Discussion

Defendant argues that Plaintiff fails to state any claims under the NYSHRL "because she does not—and cannot—allege that she felt the impact of any alleged discriminatory acts in New York State." Dkt. 22-2 ("Motion") at 6-10.  Plaintiff concedes that her NYSHRL claims "must be dismissed" for this reason, but seeks leave to file a Second Amended Complaint substituting those claims for ones "under Florida law," as she "worked remotely for Defendant from her home in Florida at all relevant times."  Opposition at 7-8.  So the Court grants Defendant's motion to dismiss Plaintiff's NYSHRL claims with prejudice.  Defendant further argues that "any allegations prior to June 4, 2023" are "time-barred under Title VII and the ADEA," meaning that the only timely claims concern Plaintiff's March 4, 2024 termination.  Motion at 10-11.[3]  Plaintiff argues,

---

[3] That is because "[a]n employment discrimination claim must be filed with the EEOC

though, that even if her allegations are "partly time-barred," all still may be considered because they "highlight[] Defendant's pattern and practice of discrimination and provide[] context for the termination of her employment." Opposition at 6. Plaintiff makes no other argument for why any challenge to actions by Defendant prior to her termination, including her November 2021 reassignment, is timely, nor could she given her EEOC filing in March 2024. *See generally id.*

In light of Plaintiff's concessions, the issues before the Court are whether (1) Plaintiff states Title VII and ADEA claims relating to her termination and (2) Plaintiff should be granted leave to file a Second Amended Complaint asserting claims under Florida law.

**A.      Plaintiff States Title VII and ADEA Claims Related to Her 2024 Termination.**

"Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Buon*, 65 F.4th at 78 (quoting 42 U.S.C. § 2000e-2(a)(1)). "[T]o properly assert a claim of discrimination against an employer under Title VII, a plaintiff must allege two elements: (1) the employer discriminated against her (2) because of her race, color, religion, sex, or national origin." *Id.* (citation modified). Put differently, for a Title VII "discrimination claim to survive a motion to dismiss, absent direct evidence of discrimination, what must be plausibly

---

within 300 days of the alleged discrimination in a state[] like New York," and "[c]laims concerning discrete acts outside this window will be time barred." *Buon v. Spindler*, 65 F.4th 64, 77 (2d Cir. 2023) (internal quotation marks omitted) (Title VII); *accord In re IBM Arbitration Agreement Litig.*, 76 F.4th 74, 81-82 & n.4 (2d Cir. 2023) (ADEA). There is some disagreement about when in March 2024 Plaintiff filed her claim with the EEOC. *Compare* Am. Compl. ¶ 7 (alleging having filed a charge with the EEOC on March 24, 2024), *with* Motion at 4 n.4 ("Contrary to Plaintiff's allegation in [paragraph] 7 of the Amended Complaint, Plaintiff's EEOC Charge was signed and dated by Plaintiff on March 30, 2024, not March 24, 2024."). But even assuming Plaintiff filed with the EEOC on the earlier date, Plaintiff does not allege any acts of discrimination for which resolving that disagreement would be relevant.

supported by facts alleged in the complaint is that the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* at 79 (citation modified).

The ADEA similarly makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). But unlike Title VII claimants, "to defeat a motion to dismiss . . . an ADEA plaintiff" in the Second Circuit "must plausibly allege that [she] would not have been terminated but for [her] age." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 & n.5 (2d Cir. 2021) (distinguishing the Second Circuit's "decisions in the Title VII context applying a more lenient standard at the pleading stage"). So the "same requirements" under Title VII "apply for claims under the ADEA . . . except that under the fourth prong, the plaintiff's age . . . must be a but-for cause (rather than a motivating cause)" of the employer's action. *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 89 (S.D.N.Y. 2024).

As an initial matter, the only timely Title VII and ADEA claims for this Court to consider are those concerning the discrete act of Plaintiff's March 2024 termination under the RIF. *See supra* n.3. Plaintiff suggests that the Amended Complaint "alleges that the pattern and practice of discrimination she faced in her employment with Defendant continued into Defendant's decision to terminate her employment." Opposition at 5-6. But "no such pattern-or-practice theory of liability is available to the private, non-class plaintiff[] in this case." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 146-50 (2d Cir. 2012). And Plaintiff cannot render timely otherwise time-barred acts by asserting an ongoing pattern and practice of discrimination. *See id.* at 155-58 ("[A]n

allegation of an ongoing discriminatory policy does not extend the statute of limitations where the individual effects of the policy that give rise to the claim are merely discrete acts."). Allegations of untimely activity, however, may be used as "background" to plead the existence of a "timely discriminatory act[]," *id.* at 150—here, Plaintiff's termination.

With the federal discrimination claims properly focused on Plaintiff's inclusion in the RIF, Defendant's motion to dismiss those claims fails. Defendant does not dispute that Plaintiff has adequately alleged protected status (her sex, race, and age), her qualification for employment, and an adverse employment action (her termination). *See, e.g.*, Am. Compl. ¶¶ 12 ("Plaintiff is a 45-year-old Asian woman."), 26 ("Plaintiff was an exemplary employee and helped build Defendant SpringWorks' accounting and finance departments from scratch."), 52 ("On or about March 4, 2024, Defendant SpringWorks terminated Plaintiff's employment as part of [the RIF]."). Nor does Defendant dispute that, based on the allegations in the Amended Complaint, Plaintiff has plausibly alleged that her termination was motivated by her race and sex and because of her age, including by pointing to her prior unfavorable treatment under Perier (the CFO) relative to her white male comparators, *id.* ¶¶ 29-30, 35-38, 41-44; those comparators' exclusion from the RIF, *id.* ¶ 53; the disproportionate number of Asian women and over-forty employees like her included in the RIF, *id.* ¶¶ 62, 64; and the fact that at the time of the RIF, only eleven employees had more tenure than Plaintiff, none was an Asian woman, and none was included in the RIF, *id.* ¶¶ 60-61. *See Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) ("An inference of discrimination can arise from circumstances including, but not limited to, . . . the more favorable treatment of employees not in the protected group[] or the sequence of events leading to the plaintiff's discharge." (internal quotation marks omitted)); *Alfaro-Flecha v. ORC Int'l, Inc.*, No. 15 Civ. 1402 (AJN), 2016 WL 67722, at *5 (S.D.N.Y. Jan. 5, 2016) ("[T]he data lend credence to [the plaintiff's] allegation that

older employees were terminated at a higher rate than younger employees.  That allegation contributes to the minimal inference required under *Littlejohn*.").

Instead, Defendant disputes the truthfulness of those allegations—particularly, the statistics of employees terminated as part of the RIF.  *See* Motion at 13-14 ("The actual statistics and data from the RIF directly contradict the inaccurate statistics provided in the Amended Complaint."); Reply at 7 (similar).  According to Defendant, this Court should consider the "actual RIF data" as presented in the "adverse impact analysis" attached to Defendant's motion, because that analysis "is 'integral' to the Amended Complaint."  Motion at 11-12 (citing Dkt. 22-4).  But Defendant misunderstands the kind of integral material that a court may consider on a Rule 12(b)(6) motion.  At the motion-to-dismiss stage, a court may consider "a document not expressly incorporated by reference in the complaint" when "the complaint relies heavily upon its terms and effect."  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotation marks omitted).  Put differently, integral material is usually "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls," *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006), which is not the same as a document that happens to "refer to events" in greater or different detail as allegations in the complaint—such a document, instead, is "evidence," *Shi v. Moog Inc.*, 19-CV-339V, 2019 WL 4543129, at *5 (W.D.N.Y. Sept. 19, 2019), *report and recommendation adopted*, 2020 WL 5668979 (W.D.N.Y. Sept. 24, 2020).  The adverse impact analysis of the RIF is the latter, not the former; "[a] document is not 'integral' simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff *relied on the document* in preparing [her] complaint."  *Williams v. City of New York*, No. 14 Civ. 5123 (NRB), 2015 WL 4461716, at *2 (S.D.N.Y. July 21, 2015)

(emphases altered).  There is no such indication that Plaintiff relied on the adverse impact analysis, as opposed to the RIF itself.

And "even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," and it "must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation mark omitted).  Here, by contrast, Plaintiff disputes the accuracy and significance of the data within the adverse impact analysis.  *See* Opposition at 6 ("[T]he Adverse Impact Analysis . . . appears to show that minority females over the age of 40 had an extremely low chance of termination in the March 2024 RIF when the opposite is true."); *id.* ("[The adverse impact analysis] purports to show that the decisional unit including [Plaintiff] consisted of 34 people who reported directly or indirectly to the CFO.  [Plaintiff] was one of only four people who directedly reported to the CFO.").  Considering the adverse impact analysis, then, "would permit the improper transformation of the Rule 12(b)(6) inquiry into a summary-judgment proceeding—one featuring a bespoke factual record, tailor-made to suit the needs of" Defendant.  *Goel*, 820 F.3d at 560.  So the Court will not consider the analysis at this stage.  Absent the adverse impact analysis, Plaintiff's Title VII and ADEA claims concerning her termination survive the motion to dismiss; Defendant's arguments are best left for summary judgment.

## B.    The Court Denies Plaintiff Leave to Amend.

Finally, the Court will not allow Plaintiff to file a Second Amended Complaint to add discrimination claims under Florida law in place of her NYSHRL claims.  *See* Opposition at 7-8. Under the Federal Rules of Civil Procedure, a "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Leave to amend, though liberally granted, may

properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  After Plaintiff filed her original Complaint, Defendant conveyed its position that she could not state any NYSHRL claims, *see* Dkt. 14 at 2, Plaintiff in response sought "leave from the Court to amend [her original] Complaint to the extent necessary to correct any defects," Dkt. 16 at 1, and she then filed her Amended Complaint but without substituting her NYSHRL claims for claims under Florida law, Dkt. 18.  As the Second Circuit has explained, "[w]hen a plaintiff was aware of the deficiencies in [her] complaint when [she] first amended, [she] clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first," because "a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*."  *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) (citation modified); *see also Ramsey v. City of Newburgh*, No. 23 Civ. 8599 (CS), 2024 WL 4444374, at *4 (S.D.N.Y. Oct. 8, 2024) ("In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend.").  Just so here.

## IV.  Conclusion

For the above reasons, the Court grants Defendant's motion to dismiss Plaintiff's NYSHRL claims but denies Defendant's motion to dismiss Plaintiff's Title VII and ADEA claims relating to her termination.  The Court also denies Plaintiff leave to file a Second Amended Complaint.

The Clerk of Court is respectfully directed to close Docket Number 22.

SO ORDERED.

Dated: March 10, 2026
      New York, New York

                                      JOHN P. CRONAN
                             United States District Judge